ANN ROUTH *v.* JOHN ROUTH, Her Husband.

Where a marriage was contracted in another State, with the *bona fide* intention of making this the matrimonial residence, and, in pursuance of such intention, the parties become, within a reasonable time, domiciliated in this State, the property belonging to the wife before the marriage, and received by the husband at the time, or afterwards, remains her separate estate, according to the laws of this State.

APPEAL from the District Court of Concordia, *Willson,* J.
*Stacy* and *Sparrow,* for the plaintiff.
*F. H.* and *T. P. Farrar,* for the appellants.

BULLARD, J. In this case the plaintiff sues her husband for a separation of property. She alleges that, in October, 1815, she intermarried with him in Adams county, Mississippi Territory, and that he then resided in the parish of Concordia. That soon after their marriage, in pursuance of a well known, previously expressed intention of both parties, they removed to his domicil and residence in the parish of Concordia. That she was then

owner of a considerable property in her own right, which, after the marriage, was paid over to, and received by her said husband. She also enumerates several slaves and their increase, whom she alleges are in possession of her husband, who, it is averred, is in embarrassed circumstances.

The Agricultural Bank of Natchez and James Brown of New York, alleging themselves to be creditors of the defendant to a large amount, intervened and made opposition to the plaintiff's pretensions. They deny that the plaintiff has any rights; they allege, on the contrary, that the parties were married and domiciled in the Territory of Mississippi, where, by law, the personal property owned by the wife before the marriage, vests absolutely in the husband. This is admitted to be the law of that Territory.

The plaintiff had judgment according to the prayer of her petition, and the intervenors prosecute the present appeal.

There appears to be no difficulty in relation to the amount of the property owned by the plaintiff; and the only important question which the case presents, relates to the matrimonial domicil of the parties. According to the well settled doctrine of the law, if the parties contracted marriage with a *bona fide* intention of making Louisiana the place of their common or matrimonial residence, and, in pursuance of such intention, did within a reasonable time, become domiciled in this State, then the property belonging to the wife before marriage, and received by the husband afterwards, or at the time, remained her separate estate, according to the laws of Louisiana. 3 Mart. 60. 2 Mart. N. S. 574. Story, on the Conflict of Laws, No. 191, *et seq.*

The evidence shows that the plaintiff was, at the time of her marriage, an orphan, residing with her uncle in the Mississippi Territory, and that Routh was a minor, managing the plantation of his father, in the State of Louisiana. Judge Perkins, a perfectly disinterested witness, states that he had known the parties from an early period. The defendant, before his marriage, divided his time between his father's residence in Natchez, and his plantation on Lake St. Joseph, in the parish of Concordia. In 1814, he was his father's overseer on the same plantation. In 1815 his time was again divided between his father's

residence and plantation.    After their marriage they resided together on Lake St. Joseph, until about 1820 or 1822, and then often at their city residence, Natchez.    Witness is not aware that Routh ever relinquished his citizenship in Louisiana.    He kept up two establishments; one for the advantage of *society*, and the other for *profit*.    He states that Routh was more than once elected to the legislature, and was often a member of the police jury.    This witness cannot say what were the intentions of the parties as to residence, but thinks it most likely that they intended to reside in Louisiana, as Mr. Job Routh told him, he had paid his son John, the defendant, $500 a year as an overseer for him, prior to his marriage, and that he sanctioned his marriage, young as he was, on condition that he would reside with his family, on his (Job Routh's) plantation, in Concordia; and that he was to pay him hire for Mrs. Routh's negroes $1500, to be added to the $500 as overseer, making $2000.    He was to pay his son annually for his services, and the use of her property. They did reside on his father's plantation some two, three, or four years; afterwards at Hollywood, the residence of John Routh, on Lake St. Joseph, until after the completion of their town house, after which their time was measurably divided between the two places.

It is clearly shown that, soon after the marriage, the parties did remove to, and establish their matrimonial domicil in Louisiana; and several witnesses, whose testimony is unimpeached, have testified that this removal was in pursuance of a previous declared intention of the parties.

The evidence of citizenship of John Routh from 1814 till 1822, is full and conclusive.    We find him representing his neighborhood in the police jury; sometimes his parish in the House of Representatives of the General Assembly, and frequently in attendance upon the courts as a grand or petit juror; in short performing the various actions of a citizen.    If, in 1833, he made a formal declaration of his intention to make the said parish of Concordia his sole and exclusive domicil, it by no means implies that in law, his domicil was not in fact previously there; and we can regard that declaration as having no other effect than to give public notice, that, although a part of the year

was spent in a place which offered greater resources in a social point of view, and especially for the education of his children, yet he still retained the parish of Concordia, as his sole legal domicil.

The intervenors have pleaded the prescription of five, ten, twenty, and thirty years; but their counsel has not explained to us by what part of the Code, or the laws of the land, the claims of the wife against the husband can be lost by prescription, during the existence of the marriage.

Upon the whole we conclude, with the District Court, that the rights of the parties are to be governed by the laws of Louisiana.

*Judgment affirmed.*